UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80301-ROSENBERG/HOPKINS

ROBERT S. LEVIN &
JOYCE V. LEVIN,

    Plaintiffs,

v.

PALM BEACH COUNTY, et al.,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 63] and *pro se*[1] Plaintiffs' (Mr. Robert Levin and Mrs. Joyce Levin) Motion for Summary Judgment [DE 59]. Both Motions have been fully briefed. For the reasons set forth below, Defendants' Motion is granted and Plaintiffs' Motion is denied.

This is a case about service. One of the Plaintiffs, Ms. Joyce Levin, is the owner of a home at 6940 Queenferry Circle, Boca Raton, Florida. In 1998, Defendant Palm Beach County, through its code enforcement office, contends that it mailed a notice of code violation to Plaintiffs. Plaintiffs contend that they never received that notice. As a result of Plaintiffs' alleged failure to receive notice, Plaintiffs maintain that subsequent code enforcement proceedings violated their constitutional rights and caused them damages. Plaintiffs seek a declaratory judgment, together with a count for negligence, in connection with the same. Both parties have filed motions for summary judgment. In considering these motions, the operative question for the Court is not whether Plaintiffs *actually*

---

1 Although Plaintiffs are both technically proceeding *pro se*, the court file indicates that Mr. Levin has a legal education, has litigated other cases in the past, and works for a company named Landmark Legal Foundation. DE 75 at 2.

received service of code enforcement violations, but instead whether Defendants' efforts at service complied with Florida law.

Florida Statute 162.12(1) governs this question. That statute reads:

> All notices required by this part must be provided to the alleged violator by . . . . Certified mail, and at the option of the local government return receipt requested, to the address listed in the tax collector's office for tax notices or to the address listed in the county property appraiser's database. . . .

Furthermore, "The question . . . is not whether the owners actually received notice, which is not demanded by section 162.12, nor always required by law, . . . but whether the notice provided . . . satisfied the statutory requirements." *Little v. D'Aloia*, 759 So. 2d 17, 20 (Fla. Dist. Ct. App. 2000). Plaintiffs' constitutional rights are not violated, even in the absence of actual notice, because due process only requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court first notes Plaintiffs' arguments as to why Defendants' notice was insufficient under § 162.12. The Court then examines the record evidence pertaining to Defendants' efforts at service.

First, Plaintiffs argue that none of the notices of violation mailed to Plaintiffs included a United States Postal Service certified mail article number on the notices. DE 60 at 6-7. Defendants concede this is true. DE 84 at 7. Second, Plaintiffs argue that the United States Postal Service return receipts do not set forth the contents of what was mailed. DE 60 at 7. Defendants concede this is true. DE 84 at 7. Third, Plaintiffs contend that they never received actual notice. DE 60 at 7-17. Defendants do not concede this point. DE 84 at 7. Defendants' concessions are premised upon their accurate contention that Plaintiffs' arguments do not correctly apply the law. The question before the

Court does not turn on whether a particular notice contained a certified mail article number on it or whether Plaintiffs received actual notice. The question before the Court is whether Defendants complied with the notice provisions of § 162.12, which in return required Defendants to send notice by certified mail to "the address listed in the tax collector's office for tax notices or to the address listed in the county property appraiser's database." Fla. Stat. § 162.12; *see, e.g.*, *Jacobson v. Attorney's Title Ins. Fund, Inc.*, 685 So. 2d 19, (Fla. Dist. Ct. App. 1996) ("Section 162.12(1) . . . requires that the alleged violator be sent notice by certified mail.").

The Court now turns to Defendants' evidence of compliance with § 162.12. Defendants' evidence may be divided into the following categories: (1) evidence that a notice[2] was created, (2) evidence that a notice was mailed by certified mail, (3) evidence that a notice was delivered, and (4) evidence that Plaintiffs did receive and read the contents of the notice.

Evidence that a Notice of Violation was Created

Defendants have a sworn declaration from the code enforcement officer who prepared the notices of violation (together with related documents) in this case, Ms. Deborah Wiggins. DE 63 at 5. Ms. Wiggins attests that in August of 1998 she prepared a violation work-sheet for Plaintiffs' property. DE 64-21 at 4. She further attests that, to determine where to send the notice of violation, she looked up the address in the "address listed in the tax collector's office," which § 162.12 requires, and that the address she located was "Levin Robert S & Joyce V" at "2901 Clint Moore Road #423, Boca Raton, Florida."[3] *Id.* Ms. Wiggins took all of the data necessary for a formal notice of violation

---

[2] Although four notices are implicated in this case, similar factual predicates underscore each notice. In the interest of simplicity and brevity, the Court's discussion and analysis focuses on a single notice.

[3] Defendants have cited extensive evidence explaining why Plaintiffs' tax bills were sent to an address other than the address of the real property at issue. *See* DE 63 at 1-5. Stated succinctly, tax bills were sent to the Clint Moore address as early as 1997; Plaintiffs utilized that address in other, unrelated litigation; Mr. Levin received mail at that address for his business; and, finally, Mr. Levin conceded at his deposition that if he received a notice of violation pertaining to the real property in this case, he would have told Mrs. Levin about it. *Id.*

to be typed and she placed that information "in the appropriate work bin" for clerical staff to prepare the notice of violation. *Id.* This was her normal practice. *Id.* at 3-6.

### Evidence that a Notice of Violation was Mailed by Certified Mail

The clerical employee that Defendants contend mailed Plaintiffs' notice of violation, Ms. Joy Mitchell, is deceased. *Id.* at 5. Because that employee is deceased, Ms. Wiggins testified about the normal practice once a notice of violation is placed into "the appropriate work bin." Ms. Wiggins attests that the clerical employee who prepares the notice of violation places her initials on the notice of violation as part of her normal practice. *Id.* In accordance with that practice, Ms. Mitchell's initials do appear on the notice of violation, indicating that she prepared it from the appropriate work bin. *Id.* at 143. Also in accordance with Defendants' standard practices, a receipt for certified mail was attached to the notice of violation and placed into the appropriate code enforcement case file. *Id.* at 5. Ms. Wiggins attests that the attachment of the receipt for certified mail to the notice of violation is evidence that, in accordance with normal practice, the notice of violation was mailed by certified mail. *See id.* The date on the notice of violation is **September 24, 1998**.

### Evidence that a Notice of Violation was Delivered

A return receipt for the notice of violation was received by Defendants. *Id.* at 144. The return receipt indicates a delivery date of **September 26, 1998**. *Id.* That return receipt indicates that the notice was signed for by an "M. Miro." *Id.* The address the notice of violation was sent to corresponded to a "Beat Feet Postal Center." The current owner of that facility is Mr. John Doherty. DE 64-23. Mr. Doherty began working at the postal center in 1997. *Id.* at 10. He purchased the postal center in 2001. DE 64-11 at 3. Mr. Doherty attests that the normal practice and procedure when certified mail was received in 1998 (and the present) was to accept the mail and then place the mail into the respective customer's mailbox in a timely fashion. *Id.* at 2. Mr. Doherty further attested

that during the events of this case, the postal center employed a Ms. Michelle Miro, whose name corresponds to the signature on the notice of violation referenced above. *Id.* at 3-4. Based upon the standard procedures of the postal center, Mr. Doherty attested that the notice of violation, signed for by Ms. Miro, would have been placed in Plaintiffs' mailbox.[4] *Id.* Finally, Mr. Doherty attested to seeing Plaintiffs, from time to time, enter the postal center to receive their mail. *See id.* at 3.

Evidence that Plaintiffs had Actual Notice

The code enforcement officer assigned to Plaintiffs' case, Ms. Wiggins, attested to a certain document in her case file. That document is entitled "While You Were Out." DE 64-21 at 7. The date on the document is **September 29, 1998**. *Id.* The document contains the following information: (i) Mr. Levin's name, (ii) Mr. Levin's phone number, (iii) the building permit number relevant to the real property in this case, and (iv) a reference to a fence, which was the subject of the notice of violation. *Id.* Ms. Wiggins attests that this document was created after she had a conversation with Mr. Levin on the telephone on September 29, 1998. *Id.* This document is particularly probative since it contains Mr. Levin's business phone number and it leads to the logical question: "How did Ms. Wiggins obtain Mr. Levin's business phone number?" *See* DE 63 at 7.

Plaintiffs do not adequately dispute Defendants' record evidence. Plaintiffs do not dispute Defendants' standard procedures for creating notices of violation. DE 83 at 3. Although Plaintiffs facially dispute that their notice of violation was mailed, Plaintiffs' dispute is limited to technical arguments such as "[n]one of the notices alleged to have been sent . . . included certified mail article numbers." *Id.* Similarly, while Plaintiffs facially dispute that notices of violation were delivered, Plaintiffs' arguments focus on tangential points ("[Mr.] Doherty . . . had no recollection of receiving any certified mail for Plaintiffs") instead of refuting what is germane—Plaintiffs have no evidence,

---

4 Mr. Doherty signed for other notices sent to Plaintiffs in this case.

5

for example, that the postal center's standard practice was not to place mail into its customer's mailboxes. *Id.* Finally, although Mr. Levin attests that he did not speak with Ms. Wiggins on the phone,[5] Mr. Levin offers no evidentiary explanation as to how Ms. Wiggins obtained Mr. Levin's business phone number if he did not, in fact, call Ms. Wiggins. *Id.*

For Plaintiffs' due process claim to survive summary judgment, Plaintiffs must set forth specific facts that show there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Viewing all factual inferences in Plaintiffs' favor,[6] the Court must make the threshold inquiry as to whether there is a genuine issue for trial that can be resolved by a factfinder because the issue may reasonably be resolved in favor of either party. *Id.* When the evidence can lead to but one reasonable conclusion, the Court must grant summary judgment as a matter of law in favor of that evidence. *Id.* Here, Plaintiffs' factual contentions are simply unreasonable. A reasonable jury would take into account that witnesses will likely not have actual knowledge of a specific piece of mail they sent or received twenty years go. Instead, evidence of typical pattern and practice is highly relevant. Evidence explaining the documentary evidence that does exist is highly relevant. On those issues, Plaintiffs have no adequate counter-evidence. Moreover, all of the record evidence is in Defendants' favor—Defendants have the notice of violation; Defendants have an internal file reflecting the drafting (and who drafted) the notice of violation; Defendants have evidence that the notice was mailed, together with pattern and practice evidence on the same; Defendants have a return receipt showing the notice was delivered and who signed for the notice; Defendants have pattern and

---

5 Plaintiffs' dispute of this fact is a vague citation to "Exhibit F," which is encompassed in a 268 page document, without a pincite, which is a violation of this Court's order on summary judgment procedures at docket entry 12. To the extent Plaintiffs intended for this Court to review Mr. Levins' affidavit at "Exhibit E," that affidavit does not explain how Ms. Wiggins obtained Mr. Levin's business phone number. Furthermore, the Court notes without deciding that when a plaintiff's affidavit is contradicted by objective evidence (here, Ms. Wiggins' possession of Mr. Levin's phone number) the court must disregard the affidavit. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
6 *Scott*, 550 U.S. at 378.

practice evidence showing that the person who signed for the notice would have placed it into Plaintiffs' mailbox; and Defendants have evidence that Mr. Levin called Defendants after receiving the notice of violation to discuss the violation.

This case is not like cases such as *Ciollo v. City of Palm Bay*, 59 So. 3d 295 (Fla. Dist. Ct. App. 2011)—upon which Plaintiffs rely—where a defendant governmental entity relied upon nothing more than an unauthenticated return receipt to establish statutory compliance; the Defendants in this case have documented a large amount of detailed evidence tracking the path of the notices of violation through the delivery process. Ultimately, however, the Court's decision is narrow. The Court need not decide whether Plaintiffs received actual notice. Instead, the Court need only consider whether a reasonable jury could find that Defendants did not comply with § 162.12, which only requires that Defendants, through certified mail, sent their notices to "the address listed in the tax collector's office for tax notices or to the address listed in the county property appraiser's database." The Court concludes that no reasonable juror could find that Defendants did not comply with the notice requirements of § 162.12. Accordingly, Defendants' claims, all of which are premised on improper service, cannot stand.

For all of the foregoing reasons, Defendant is entitled to summary judgment, and it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 63] is **GRANTED**, Plaintiffs' Motion for Summary Judgment [DE 59] is **DENIED**, all pending motions are **DENIED AS MOOT**, and the Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 2nd day of November, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record